# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

JOSHUA MAY,

      Plaintiff,

vs.                                                                    No.  18-cv-1109 WJ-LF

B. JUDD, *et al*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's *Pro Se* Prisoner Civil Rights Complaint (Doc. 1-3).   Also before the Court is Defendant Judd's Motion to Dismiss (Doc. 2) and several miscellaneous motions filed by Plaintiff (Docs. 3-4, 9-10).   Plaintiff contends prison officials violated his due process rights and inflicted cruel and unusual punishment by placing him in the Predatory Behavior Management Program.   Having reviewed the matter under 28 U.S.C. § 1915A, the Court will dismiss the Complaint; grant leave to amend; and deny Plaintiff's pending motions.

## I. Background[1]

Plaintiff was previously incarcerated at Northwest New Mexico Correctional Facility (NNMCF).   In early 2018, prison officials became suspicious that a nurse was smuggling drugs to Plaintiff.   On April 27, 2018, Plaintiff visited the medical unit following an alleged spider bite. Prison officials were monitoring a video recording of the visit and observed the nurse passing a box to Plaintiff.   Officers Ray and Andrade asked to see the box as they escorted Plaintiff back to

---

[1] The background facts are taken from Plaintiff's complaint and the supporting attachments (Doc. 1-3).  For the limited purpose of this ruling, the Court assumes Plaintiff's allegations are true.

his housing unit. When Andrade tried to look inside the box, Plaintiff purportedly became angry and reached out to take it back. Officer Ray stepped in front of Andrade and directed Plaintiff to move away, but Plaintiff continued moving forward and made contact with Ray's torso. When prison officials searched the box, they discovered suboxine, marijuana, a brown substance that looked like heroin, and a letter from the nurse. Plaintiff later surrendered another balloon containing heroin and tested positive for seven substances.

Prison officials charged Plaintiff with assault and introduction of contraband. They placed him in the restrictive housing unit at NNMCF while the charges were pending. On June 11, 2018, Warden Judd referred Plaintiff to the Predatory Behavior Management Program (PBMP). The attachments to the Complaint reflect Plaintiff was served with the Notice of Contemplated Action (Notice) on June 13, 2018. *See* Doc. 1-3 at 10. The Notice directed Plaintiff to appear at a hearing on June 15, 2018. In the "Justification" section, the Notice contains a handwritten notation stating: "see attached." A narrative summary describing the incident appears on the next page of Plaintiff's exhibits. *Id.* at 11-12. Plaintiff alleges he never received a copy of the narrative summary. However, elsewhere in the Complaint, he states the narrative summary was changed after he signed the Notice on or about June 13, 2018. At the June 15 hearing, the contraband charge was dismissed, but prison officials determined he was responsible for assault.

Plaintiff remained in NNMCF custody until about September 7, 2018, when a bed opened up at the Penitentiary of New Mexico (PNM). PNM administers the PBMP program. Plaintiff alleges a NNMCF official stated he would receive credit for the time he spent waiting for a bed. However, a different official stated such decisions are made on a case by case basis and denied the credit. Plaintiff also alleges he was not permitted to appeal the PBMP placement; however, the

attachments to his Complaint reflect German Franco, Director of Adult Prisons, denied his appeal on October 1, 2018.

Plaintiff remained in the PBMP for about 9 months. During that time, he was permitted three showers per week and one hour of yard-time (recreation) between Monday and Friday. He also ate his meals in his cell and was not allowed radio, television, or telephone priviledges for the first four months of the program. PBMP does not offer any work assignments, aside from keeping a journal. Plaintiff alleges these conditions caused him to suffer from mood swings, anxiety attacks, nervous breakdowns, and sleep deprivation. He also believes he will carry a lifelong stigma because the program title includes the word "predator," and people may think he is a sex offender.

Plaintiff filed his Civil Rights Complaint (Doc. 1-3) on October 22, 2018 in New Mexico's Thirteenth Judicial District Court. He seeks at least $347,547 in damages under 42 U.S.C. § 1983, the Eighth Amendment, the Due Process Clause, and the New Mexico Torts Claims Act. The Complaint names Warden Judd; Deputy Warden Ortiz; Unit Manager Woodard; and Director Franco. Judd removed the Complaint to this Court on November 29, 2018, within thirty days of service. (Doc. 1). Judd also filed a Motion to Dismiss (Doc. 2) under Fed. R. Civ. P. 12(b)(6). Thereafter, Plaintiff filed a series of motions to appoint counsel and amend his complaint. (Docs. 3, 4, 9, and 10).

**II. Standard of Review**

The Court has discretion to dismiss an *in forma pauperis* complaint *sua sponte* under § 1915A "is frivolous or malicious; [or] fails to state a claim on which relief may be granted." The Court may also dismiss a complaint under Rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the]

complaint would be futile." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted). The plaintiff must frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall,* 935 F.2d at 1110. If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements." *Id.* Further, if the initial pleading is defective, *pro se* plaintiffs should be given a reasonable opportunity to file an amended pleading, unless amendment would be futile. *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990); *Hall,* 935 F.2d at 1109.

### III. Screening the Complaint

Plaintiff appears to raise three claims (due process; cruel and unusual punishment; and negligence) based on the PBMP placement. The Court will address each claim below.

#### A.      Due Process Violations

Plaintiff primarily argues his due process rights were violated because the PBMP program title contains the word "predator," which carries a lifelong stigma. This claim is not actionable. The attachments to the Complaint demonstrate the PBMP program covers all violent and disruptive behavior and is not associated with sex offenders. Moreover, there is no indication that non-

prisoner civilians or potential employers would know about his participation in the program. All claims based on the program title or the "predator" designation therefore fail.

Plaintiff also appears to argue Defendants violated his due process rights by failing to follow prison procedures in connection with the PBMP placement. He contends: (1) he did not receive a copy of the summary narrative supporting the Notice, or alternatively, prison officials changed it after he signed the Notice; (2) the Wardens "mapped" him for PBMP before completing the investigation or the PBMP checklist; (3) he did not receive credit for the time spent waiting for a bed; and (4) he was not given a right to appeal the placement. The last argument is frivolous. Plaintiff's own exhibits demonstrate he appealed the placement to the Director of Adult Prisons, and that the appeal was denied. *See* Doc. 1-3 at 27.

The first three arguments raise a procedural due process claim. "Procedural due process ensures that individuals are entitled to certain procedural safeguards before a state can deprive them of life, liberty or property." *Becker v. Kroll*, 494 F.3d 904, 918 (10th Cir. 2007). The Court examines "procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [defendants] ... the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). To meet the standards of due process in a prison disciplinary proceeding an inmate must receive "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement … of the evidence relied on and the reasons for the disciplinary action." *Gwinn v. Awmiller,* 345 F.3d 1211, 1219 (10th Cir. 2004).

Assuming without deciding that Plaintiff has a liberty interest in avoiding the PBMP

placement, and assuming the placement constitutes discipline,[2] Plaintiff failed to sufficiently allege a due process violation. Plaintiff's exhibits demonstrate he attended a hearing, and at least some allegations suggest he received a written narrative supporting the charges. He also fails to specify what, if any, changes allegedly occurred after he signed the document, or how technical defects such as the incomplete PBMP worksheet impacted his ability to answer the charges. As to the credits, it does not appear Defendants revoked earned credits, which may give rise to a due process claim. *See Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996). Instead, it appears he did not receive PBMP program credit before entering the program, which is not actionable. For these reasons, the Complaint fails to state a claim under the Due Process Clause.

B.  Eighth Amendment Violations

The Eighth Amendment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). To demonstrate prison conditions amount to cruel and unusual punishment, the alleged deprivation must be objectively serious, and the prison official must "have a sufficiently culpable state of mind." *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir. 1998) (quotations omitted) (setting out the two-part test).

Here, it appears Plaintiff was in the PBMP program between about September 7, 2018 and

---

[2]  Director Franco maintains the program is "not a punishment, but a program designed to provide meaningful alternatives instead of relying on incidents that threaten the security of the institution." Doc. 1-3 at 27. However, because the placement followed an assault charge and involves lockdown in a high-security facility, the Court will analyze the PBMP placement as a disciplinary action.

June 10, 2019. During that time, he was permitted three showers per week; one hour of recreation five days per week; two phone calls per month; and one visit per month. The Tenth Circuit has examined similar conditions and found they are not extreme enough to state an Eighth Amendment claim. *See Ajaj v. United States*, 293 Fed. App'x 575, 582–84 (10th Cir. 2008) (finding conditions such as "lock-down for 23 hours per day," "limitations on...access to telephones," and "limited ability to exercise outdoors" did not, individually or in concert, amount to an Eighth Amendment violation); *Lewis v. McKinley Cty. Bd. of Cty. Comm'rs*, 425 F. App'x 723, 727 (10th Cir. 2011) (finding no violation where inmate was only allowed to exercise two or three days per week). Moreover, Plaintiff has not alleged any Defendant was subjectively aware of potential harm, or that he suffered any physical injury as a result of the PBMP placement. While "mental and emotional distress can constitute a compensable injury in suits for damages under 42 U.S.C. § 1983 based upon violations of constitutional rights," "such suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999). For these reasons, the Complaint fails to state a claim based on Plaintiff's conditions of confinement.

C.    Negligence

Plaintiff also alleges Defendants were negligent as to his PBMP placement. To state a claim for negligence, the Complaint must allege facts showing duty, breach, proximate cause, and injury. *See Thompson v. Potter,* 268 P.3d 57, 63 (N.M. Ct. App. 2011). The Court is not convinced Defendants owed a duty to Plaintiff with respect to program placements. For the reasons discussed above, there is also no indication Defendants breached any duty to Plaintiff. The Complaint therefore fails to state a claim for negligence.

Based on the foregoing, the Court will dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). However, the Court will grant Plaintiff's motions to file an amended complaint (Docs. 4, 9, and 10). The Tenth Circuit counsels that *pro se* litigants should be given a reasonable opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Plaintiff may file an amended complaint within thirty (30) days of entry of this Opinion. If Plaintiff declines to timely file an amended complaint, the Court will dismiss the case without further notice. The Court will also deny Plaintiff's motion to appoint counsel (Doc. 3). "Courts are not authorized to appoint [attorneys] in § 1983 cases; instead, courts can only 'request' an attorney to take the case" as a volunteer. *Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). There is no basis for such an extraordinary request under the present circumstances.

**IT IS ORDERED** that Judd's Motion to Dismiss (**Doc. 2**) is **GRANTED, IN PART**; and Plaintiff's Complaint (**Doc. 1-3**) is **DISMISSED** without prejudice.

**IT IS FURTHER ORERED** that Plaintiff's Motions to Amend (**Docs. 4, 9, and 10**) are **GRANTED**; and Plaintiff may file an amended complaint **within 30 days of entry of this Order**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Appoint Counsel (**Doc. 3**) is **DENIED.**

**SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE